MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
ALBA RIVERA and LAURA BOLIVAR
ALZATE, *individually and on behalf of others*
*similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER** **29 U.S.C. § 216(b)** |
| TU CASA #2 RESTAURANT CORP.  (D/B/A TU CASA), WILLIAM ALBA SR. , and WILLIAM ALBA JR. , | **ECF Case** |
| *Defendants.* | |

-----------------------------------------------------X

Plaintiffs Alba Rivera and Laura Bolivar Alzate, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Tu Casa #2 Restaurant Corp. (d/b/a Tu Casa), ("Defendant Corporation"), William Alba Sr. and  William Alba Jr., ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Tu Casa #2 Restaurant Corp. (d/b/a Tu Casa), William Alba Sr., and William Alba Jr.

2.       Defendants own, operate, or control a Spanish and Peruvian restaurant, located at 30-10 Steinway St, Astoria, NY 11103 under the name "Tu Casa".

3.      Upon information and belief, individual Defendants William Alba Sr. and William Alba Jr., serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiffs were ostensibly employed as servers, bartenders, waitresses, and cashiers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to setting up the chairs at the beginning of the shift and putting them back on the tables at the end of the shift, setting the tables with silverware and salt and pepper, bringing fruits, juices, and liquor to the bar from the basement, cleaning the tables, counters, the bar, bottles, sweeping and mopping the bar area and refilling  bottles of expensive liquor with cheap liquor(as ordered by defendants), hereafter the ("non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs as servers, bartenders, waitresses, and cashiers in their payroll, but in actuality their duties required a significant amount of time spent performing non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as servers, bartenders, waitresses, and cashiers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credited rate.

13.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Spanish and Peruvian restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.     Plaintiff Alba Rivera ("Plaintiff Rivera" or "Ms. Rivera") is an adult individual residing in Queens County, New York. Plaintiff Rivera was employed by Defendants at Tu Casa from approximately June 2012 until on or about August 17, 2017.

20.     Plaintiff Laura Bolivar Alzate ("Plaintiff Bolivar" or "Ms. Bolivar") is an adult individual residing in Queens County, New York. Plaintiff Bolivar was employed by Defendants at Tu Casa Restaurant from approximately September 2013 until on or about November 21, 2017.

*Defendants*

21.     At all relevant times, Defendants owned, operated, or controlled a Spanish and Peruvian restaurant, located at 30-10 Steinway St, Astoria, NY 11103 under the name "Tu Casa".

22.    Upon information and belief, Tu Casa #2 Restaurant Corp. (d/b/a Tu Casa) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 30-10 Steinway St, Astoria, NY 11103.

23.    Defendant William Alba Sr. is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant William Alba Sr. is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant William Alba Sr. possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

24.    Defendant William Alba Jr. is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant William Alba Jr. is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant William Alba Jr. possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

25.     Defendants operate a Spanish and Peruvian restaurant located in the Astoria section of Queens in New York City.

26.     Individual Defendants, William Alba Sr. and William Alba Jr., possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

27.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

28.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

29.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

30.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

31.     Upon information and belief, Individual Defendants, William Alba Sr. and William Alba Jr. operate Defendant Corporation as either an alter ego of  themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

      a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of their own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

32.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

33.     In each year from 2012 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

34.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

35.     Plaintiffs are former employees of Defendants who ostensibly were employed as servers, bartenders, waitresses, and cashiers. However, they spent over 20% of each shift performing the non-tipped duties described above.

36.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Alba Rivera*

37.     Plaintiff Rivera was employed by Defendants from approximately June 2012 until on or about August 17, 2017.

38.     At all relevant times, Plaintiff Rivera was employed by Defendants to work as a waitress and bartender.

39.     However, Plaintiff Rivera also was required to spend a significant portion of her work day performing the non-tipped duties described above.

40.     Although Plaintiff Rivera ostensibly was employed as a waitress and bartender, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

41.     Plaintiff Rivera regularly handled goods in interstate commerce, such as Spanish and Peruvian food, condiments, and supplies necessary to perform her duties as a server.

42.     Plaintiff Rivera's work duties required neither discretion nor independent judgment.

43.     Throughout her employment with Defendants, Plaintiff Rivera regularly worked in excess of 40 hours per week.

44.     From approximately June 2012 until on or about June 2014, Plaintiff Rivera worked from approximately 10:30 a.m. until on or about 11:00 p.m. to 12:00 a.m., three days a week and from approximately 5:00 p.m. until on or about 11:00 p.m. to 12:00 a.m. three days a week (typically

55.5 to 61.5 hours per week).

45.     From approximately June 2014 until on or about December 2014, Plaintiff Rivera worked an average of approximately 36 hours per week.

46.     From approximately December 2014 until on or about December 2015, Plaintiff Rivera worked a range from approximately 37 to 56 hours per week. Two days out of the week, she worked from approximately 10:30 a.m. until on or about 11:00 p.m.

47.     From approximately January 2016 until on or about August 17, 2017, Plaintiff Rivera worked an average range of 37 to 47 hours per week, 4 to 5 days a week. On the occasions when she worked in excess of 40 hours, Defendants would exclude the hours worked over 40 from her paycheck. The schedule in the restaurant, did not reflect the instances where she covered another employee's shift.

48.     From approximately June 2012 until on or about June 2014, Plaintiff Rivera was paid her wages in cash.

49.     From approximately June 2014 until on or about August 17, 2017, Plaintiff Rivera was paid her wages by check.

50.     From approximately June 2012 until on or about February 2014, Plaintiff Rivera was paid a salary of $25.00 per shift.

51.     From approximately March 2014 until on or about December 2014, Plaintiff Rivera was paid $5.00 per hour.

52.     From approximately January 2015 until on or about December 2015, Plaintiff Rivera was paid $5.50 per hour.

53.     From approximately January 2016 until on or about August 17, 2017, Plaintiff Rivera was paid $7.50 per hour.

54.    Plaintiff Rivera's wages did not vary regardless of how many additional hours she worked in a week.

55.    In fact, approximately two times a month, Defendants would host parties at the location, forcing Plaintiff Rivera to stay until 3:00 a.m., and did not compensate her for the additional time they required her to work.

56.    Defendants never granted Plaintiff Rivera any break or meal periods of any length.

57.    Plaintiff Rivera was never notified by Defendants that her tips would be included as an offset for wages.

58.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Rivera's wages.

59.    Defendants withheld a portion of Plaintiff Rivera's tips.

60.    Further, Defendants required Plaintiff Rivera and all other tipped employees to share their tips with other employees.

61.    Prior to January 2017, Plaintiff Rivera was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

62.    Defendants never provided Plaintiff Rivera with any accurate document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

63.    Defendants never provided Plaintiff Rivera with an accurate statement of wages, as required by NYLL 195(3).

64.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Rivera regarding wages as required under the FLSA and NYLL.

65.    Defendants never gave any notice to Plaintiff Rivera, in English and in Spanish (Plaintiff Rivera's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Laura Bolivar Alzate*

66.    Plaintiff Bolivar was employed by Defendants from approximately September 2013 until on or about November 21, 2017.

67.    Defendants ostensibly employed Plaintiff Bolivar as a waitress, cashier, and bartender.

68.    However, Plaintiff Bolivar was also required to spend a significant portion of her work day performing the non-tipped duties described above.

69.    Although Plaintiff Bolivar ostensibly was employed as a waitress, cashier, and bartender, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

70.    Plaintiff Bolivar regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

71.    Plaintiff Bolivar's work duties required neither discretion nor independent judgment.

72.    Throughout her employment with Defendants, Plaintiff Bolivar regularly worked in excess of 40 hours per week.

73.    From approximately September 2013 until on or about December 2013, Plaintiff Bolivar worked as a waitress, cashier, and bartender from approximately 5:00 p.m. until on or about 11:00 p.m., Mondays and Thursdays and from approximately 5:00 p.m. until on or about 2:00 a.m., Fridays through Sundays (typically 39 hours per week).

74.     From approximately March 2014 until on or about February 2016, Plaintiff Bolivar worked as a waitress, cashier, and bartender from approximately 11:00 a.m. until on or about 5:00 p.m. as a cashier, Mondays and Fridays, from approximately 5:00 p.m. until on or about 12:00 a.m. as a cashier, Sundays, from approximately 5:00 p.m. until on or about 11:00 p.m. as a waitress, Mondays and Tuesdays, and from approximately 5:00 p.m. until on or about 2:00 a.m. as a waitress, Fridays and Saturdays (typically 49 hours per week).

75.     From approximately February 2016 until on or about April 2017, Plaintiff Bolivar worked as a waitress, cashier, and bartender from approximately 11:00 a.m. until on or about 5:00 p.m. as a cashier, Mondays, Tuesdays, Thursdays, and Fridays, from approximately 5:00 p.m. until on or about 11:00 p.m. as a waitress, Mondays and Tuesdays, and from approximately 5:00 p.m. until on or about 2:00 a.m. as a waitress, Fridays and Saturdays (typically 54 hours per week).

76.     From approximately April 2017 until on or about November 21, 2017, Plaintiff Bolivar worked as a waitress, cashier, and bartender from approximately 5:00 p.m. until on or about 11:00 p.m., Mondays, Tuesdays, and Thursdays and from approximately 5:00 p.m. until on or about 2:00 a.m., Fridays and Saturdays (typically 36 hours per week).

77.     From approximately September 2013 until on or about July 2015, Defendants paid Plaintiff Bolivar her wages in cash.

78.     From approximately August 2015 until on or about April 2017, Defendants paid Plaintiff Bolivar her wages in a combination of check and cash.

79.     From approximately April 2017 until on or about November 21, 2017, Defendants paid Plaintiff Bolivar her wages by check.

80.     From approximately September 2013 until on or about December 2013, Defendants paid Plaintiff Bolivar a fixed salary of $25 per shift.

81.     From approximately March 2014 until on or about February 2016, Defendants paid Plaintiff Bolivar $5.50 per hour as a waitress, and $11 per hour as a cashier.

82.     From approximately February 2016 until on or about April 2017, Defendants paid Plaintiff Bolivar $7.50 per hour as a waitress and $12 per hour as a cashier.

83.     From approximately April 2017 until on or about November 21, 2017, Defendants paid Plaintiff Bolivar $7.50 per regular and overtime hours.

84.     Plaintiff Bolivar's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

85.     For example, Defendants required Plaintiff Bolivar to work an additional 3 hours past her scheduled departure time twice a month, and either did not pay her for the additional time she worked or paid her much less than what they had agreed to pay her.

86.     Defendants never granted Plaintiff Bolivar any breaks or meal periods of any kind.

87.     Plaintiff Bolivar was never notified by Defendants that her tips were being included as an offset for wages.

88.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Bolivar's wages.

89.     Defendants withheld a portion of Plaintiff Bolivar's tips.

90.     Further, Defendants required Plaintiff Bolivar and all other tipped employees to share their tips with other employees.

91.     Prior to January 2017, Plaintiff Bolivar was not required to keep track of her time, nor to her knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected her actual hours worked.

92.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Bolivar regarding overtime and wages under the FLSA and NYLL.

93.    Defendants did not provide Plaintiff Bolivar an accurate statement of wages, as required by NYLL 195(3).

94.    In fact, Defendants adjusted Plaintiff Bolivar's paystubs so that they reflected inaccurate wages and hours worked.

95.    Defendants did not give any notice to Plaintiff Bolivar, in English and in Spanish (Plaintiff Bolivar's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

96.    Defendants required Plaintiff Bolivar to purchase "tools of the trade" with her own funds—including uniforms such as polo shirts, button down shirts, pants and shoes.

*Defendants' General Employment Practices*

97.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

98.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

99.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

100.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

101.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

102.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

103.    Defendants required all servers, bartenders, waitresses, and cashiers to perform general non-tipped tasks in addition to their primary duties as servers, bartenders, waitresses, and cashiers. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

104.    These Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

105.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

106.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

107.    The servers, bartenders, waitresses, cashiers, and bartenders' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

108.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

109.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

110.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

111.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as servers, bartenders, waitresses, and cashiers for the tips they received.

112.    Plaintiffs were paid their wages in cash, by check, and in a combination of check and cash.

113.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

114.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

115.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

116.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

117.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

118.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

119.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf

of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

120.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

121.    The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

122.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

123.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

124.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

125.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

126.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate.

127.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

128.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

129.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

131.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

132.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

133.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

134.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

135.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

136.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

137.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

140.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

141.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

144.      Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs'
spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

145.      Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW

146.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.      Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish
(Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by
the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of
the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by
the employer; the name of the employer; any "doing business as" names used by the employer; the
physical address of the employer's main office or principal place of business, and a mailing address
if different; and the telephone number of the employer, as required by NYLL §195(1).

148.      Defendants are liable to each Plaintiff in the amount of $5,000, together with costs
and attorneys' fees.

### SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW

149.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.      With each payment of wages, Defendants failed to provide Plaintiffs with an accurate
statement listing each of the following: the dates of work covered by that payment of wages; name
of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

151.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS

### IN VIOLATION OF THE NYLL

152.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

153.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

154.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge, purported to be a gratuity for an employee.

155.    Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA class members) tips that were received from customers.

156.    Defendants unlawfully required Plaintiffs and the FLSA class members to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL § 196-d and supporting regulations.

157.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

158.  Plaintiff' (and the FLSA class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

159.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.    Defendants required Plaintiff Bolivar to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform her jobs, further reducing her wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

161.    Plaintiff Bolivar was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants violated the tip withholding provisions of the New York Labor Law, with respect to Plaintiffs;

(m)    Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       December 27, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:  _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Laura Bolivar Alzate

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:                    Laura Bolivar.

Date / Fecha:                         27 de noviembre

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

November 27, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Alba  Rivera

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      27 de noviembre

_Certified as a minority-owned business in the State of New York_