# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 East 42nd Street, Suite 4510　　　　　　　　　　　　　　　　　Telephone: (212) 317-1200
New York, New York 10165　　　　　　　　　　　　　　　　　　　Facsimile: (212) 317-1620

jandrophy@faillacelaw.com

April 22, 2019

**VIA ECF**

Hon. Steven Tiscione
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

　　　　**Re:**　　　Rivera, et al. v. Tu Casa #2 Restaurant Corp. et al.,
　　　　　　　　　　Index No. 17 Civ. 7518 (RRM) (ST)

Dear Judge Tiscione:

I am counsel to Plaintiffs Alba Rivera and Laura Bolivar Alzate in ("Plaintiffs") in the above referenced matter, and I write to respectfully request that the Court approve the Settlement Agreement (the "Agreement") reached by the parties in this action. Plaintiffs and Tu Casa #2 Restaurant Corp. d/b/a Tu Casa ("Tu Casa"), William Alba Sr., and William Alba Jr. (collectively, "Defendants") have agreed to a negotiated settlement after extensive settlement discussions, and the proposed Agreement is attached hereto as **Exhibit A.**[1]

We therefore ask the Court to approve the settlement, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case as against Defendants with prejudice after Plaintiffs file a stipulation of dismissal accompanying the proposed settlement agreement. The parties are also aware of the decision in Wolinsky v. Scholastic Inc., 900 F. Supp.2d 332 (S.D.N.Y. 2012), and represent to the Court that while the settlement amount is less

---

[1] The Defendants have not yet signed the Agreement. We will file the fully executed once they do. We ask that the Court not dismiss the case until the parties file the fully executed agreement.

*Certified as a minority-owned business in the State of New York*

than what the Plaintiffs would be entitled to if they prevailed at trial, the settlement is fair, as discussed herein.

**Background**

Defendants operated a restaurant in Astoria under the name Tu Casa. Plaintiff Alba Rivera was employed as a waitress and bartender from approximately June 2012 until August 17, 2017. Plaintiff Laura Bolivar Alzate worked as a waitress, bartender, and cashier from September 2013 until November 21, 2017.

For much of their employment at Defendants' restaurant, Plaintiffs allege that they regularly worked in excess of 40 hours per week, and were both paid below the minimum wage rate and were not paid the proper overtime rate. Specifically, Plaintiff Rivera alleges she typically worked approximately 55.5 to 61.5 hours per week from June 2012 to June 2014. Afterwards, her weekly hours would fluctuate, ranging from approximately 36 hours per week to 56 hours per week. Rivera received $25.00 per shift until February 2014. She then was paid $5.00 through December 2014, $5.50 per hour in 2015, and $7.50 per hour from 2016 until the end of her employment on August 17, 2017. However, Rivera alleged she would often not receive pay for all the hours she worked. For example, in 2016 and 2017 Defendants would routinely exclude hours she worked from her paycheck. As such, throughout the relevant time period, Rivera was not properly compensated for her overtime hours, and was not paid at the minimum wage rate for her hours worked.

Plaintiff Bolivar typically worked 36 to 54 hours per week. From March 2014 to February 2016 she was paid $5.50 per hour for work as a waitress or bartender and $11.00 per hour for work as a cashier. She was paid $7.50 per hour for her work as a waitress and bartender since February

2016, and $12.00 per hour for work as a cashier. Bolivar alleges Defendants at times required Bolivar to work past her regular hours and did not pay her for those additional hours at all.

Plaintiffs brought this action against the Defendants seeking to recover unpaid regular and overtime wages, spread of hours pay, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 et seq., the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at 12 N.YC.R.R. § 146-1.6.

The parties reached settlement after engaging in document discovery. Settlement was aided significantly by the mediation efforts of Stephen Sonnenberg, through the Court's mediation program. Mr. Sonnenberg conducted a full-day mediation session at which settlement was achieved.

**<u>Settlement</u>**

The parties have agreed to settle this action for the total sum of seventy-two thousand dollars ($72,000 USD), in accordance with the payment schedule set forth in the Settlement Agreement (**Exhibit A**). Per said terms, Defendants will make an initial payment totaling $12,000 30 days after Court approval and dismissal of the action with prejudice, and 11 monthly payments of $5,454.54.

The Agreement is the product of much arm's-length bargaining between experienced counsel, and it is fair to Plaintiffs. Per calculations prepared by the undersigned, Plaintiffs' damages for unpaid wages and overtime totaled roughly $49,500 for Plaintiff Rivera and $19,750 for Plaintiff Bolivar, with all-inclusive damages of roughly $138,500 for Plaintiff Rivera and $61,500 for Plaintiff Bolivar. While the settlement amount is obviously less than those figures, Plaintiffs were willing to accept the settlement amount as the payments are guaranteed and slated

to begin to be paid by 30 days after Court approval. The Agreement enables Plaintiffs to secure payment while avoiding the burden and uncertainty of a trial. The Agreement also allows the Plaintiffs to avoid the uncertainties of judgment enforcement. Plaintiffs and their attorneys were aware that Defendants faced some financial challenges and agreed to enter into the settlement agreement with such concerns in mind. Moreover, in Plaintiffs' estimation, litigating the case further could be counterproductive, as it would use up whatever resources Defendants have and reduce the amount that Plaintiffs can recover. In other cases, courts have approved settlements based on Defendants' inability to pay. *See, e.g., Lawrence-Hamblet, et ano. v. Ideal Home Care Services, Inc., et ano.* No. 17-CV-6472 (AKT) (E.D.N.Y. Oct. 11, 2018) (DKT 35) (approving FLSA settlement in light of defendants' financial circumstances); *Angel v. Harvest C-Food, Inc.*, 2015 WL 6769517, at *1-*2 (S.D.N.Y. 2015) (approving FLSA settlement and stating, "[a]lthough the settlement will not come close to making plaintiffs whole, it appears to be the only rational alternative and appears to be the course of action that minimizes the injury suffered by plaintiffs").

There were also questions about the merits of the action: Defendants produced documents, including time and pay records for Plaintiffs, which if credited would indicate Plaintiffs, on average, worked less than 40 hours per week. Such documents, if credited, would result in a significantly lesser recovery than that which Plaintiffs calculated at their best-case scenario based on their allegations.

In this Circuit, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the

agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

In this case the factors support approval of the settlement. While Plaintiffs potentially could have recovered greater than the amount they are settling for, there was also a significant risk that they would recover much less from the Defendants. Trial may not have been as successful as Plaintiffs anticipated, and collection upon a judgment may have been unsuccessful. Plaintiffs faced a serious risk of only a very limited recovery from Defendants if they proceeded with the action. Moreover, Plaintiffs faced a serious potential factual dispute regarding their hours worked and the amounts paid to them, given the records produced by Defendants in discovery. The settlement is the product of arm's length negotiation between counsel over the course of the litigation, and with assistance of mediator Stephen Sonnenberg, who held an in person mediation with the parties and their attorneys.

**Plaintiff's Attorneys' Fees are Fair and Reasonable**

Under the settlement, Plaintiff's counsel will receive $24,000.00 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation, a reduction from the forty percent in attorneys' fees provided by Plaintiffs' retainer agreement with counsel.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See* Calle v. Elite Specialty Coatings Plus, Inc.*,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable.

Given Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to counsel's hard-fought negotiations. A brief biography of each attorney who performed billed work in this matter is as follows:

- Michael Faillace's work is billed at the rate of $450 per hour, which is his standard billing rate for matters paid on an hourly basis. Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with

   Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

- Joshua Androphy is a senior attorney at Michael Faillace & Associates. Androphy graduated from Columbia Law School in 2005, where he was a Harlan Fiske Stone Scholar and a managing editor for the Columbia Journal of Law and Social Problems. Following law school, Androphy worked as an associate at Olshan Frome Wolosky LLP, practicing commercial and employment litigation for seven years. Androphy joined Michael Faillace &Associates, P.C. in 2012 and has litigated more than one hundred employment actions, including over 20 trials. Androphy has been recognized as a Super Lawyers Rising Star for employment litigation in 2014, 2015, 2016, 2017, 2018, and 2019. His worked is billed at the rate of $400 per hour and is indicated by the initials "JA."

  These rates are reasonable given the experience of the attorneys in wage and hour matters, and their performance in this case. *See* Perez v. Platinum Plaza 400 Cleaners, Inc., Index No. 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Mr. Faillace and his associate, Mr. Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case"); Tenorio v. Clinton Gourmet Corp., et al., No. 15-cv-7903 (AKH), Hr'g Tr. 7:3-6, 8:23-24 (S.D.N.Y. January 22, 2016) (awarding Mr. Faillace and his associates the requested fees and finding the billing rates and hours expended reasonable).

  Plaintiff's attorneys billing records are annexed as Exhibit B. As set out therein, Plaintiffs' attorneys lodestar amount is $23,740.00 in attorneys' fees and $863.00 in costs. This is admittedly less than the amount Plaintiff's' attorneys will receive under the settlement. Nevertheless, Plaintiffs maintain that a one-third award is justified, as they were able to achieve a satisfactory

result for the Plaintiffs, and their fees should not be reduced as a result of the attorneys' efficient prosecution of their claims.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and within the range of fees typically awarded in cases in this Circuit. "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff," Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (*quoting* Farrar v. Hobby, 506 U.S. 103,114 (1992)).

Here, Plaintiffs' counsel was able to obtain a satisfactory settlement without trial, obtaining a $72,000 settlement from defendants. In total then, the requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiff has agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

**Conclusion**

Plaintiffs have been represented by counsel throughout this lawsuit, and have agreed to the settlement with the advice of counsel. Plaintiffs' interests have thus been adequately safeguarded. Additionally, dismissal of this action as to Defendants will not prejudice anyone other than Plaintiffs; no other employees have come forward, nor would they be prejudiced by dismissal of this lawsuit.

In full consideration of the issues presented in Cheeks, we believe that the parties' agreement is fair and reasonable, and that the settlement should be approved. A Stipulation of Final Dismissal will be filed for so-ordering after execution of the agreement and upon receipt of confirmation from the Court that the settlement has been approved.

Thank you for your consideration in this matter.

Hon. Steven Tiscione
April 22, 2019
Page 9 of 9

                                  Respectfully Submitted,

                                  <u>/s/ Joshua S. Androphy</u>
                                  Joshua S. Androphy
                                  Michael Faillace & Associates, P.C.
                                  *Attorneys for Plaintiff*

cc:    William Ng (via ECF)
       Paul Piccigallo (via ECF)
       *Attorneys for Defendants*